# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA L. HOWARD, | ) 1:08cv01368 DLB |
| | ) |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Melissa L. Howard ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application for SSI on January 29, 2003, alleging disability since March 1, 1994, due to "Mental disorder dyslexic." AR 108-11, 145, 188. After being denied initially

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On May 21, 2009, the matter was reassigned to the Honorable Dennis L. Beck for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 68-72, 74-79, 80-81.  On December 7, 2005, ALJ Stephen Webster held a hearing. AR 489-521.  ALJ Webster denied benefits on February 15, 2006.  AR 54-63.  After Plaintiff requested Appeals Council review, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.  AR 90-91.

On April 23, 2008, ALJ Webster held another hearing.  AR 522-49.  ALJ Webster denied benefits on May 24, 2008.[3]  AR 11-21.  The Appeals Council denied Plaintiff's request for review on August 15, 2008.  AR 7-10.

Hearing Testimony

Following remand by the Appeals Council, ALJ Webster held a hearing on April 23, 2008, in Fresno, California.  Plaintiff appeared with her attorney, Melissa Proudian.  AR 524. Vocational expert ("VE") Cheryl Chandler also appeared and testified.  AR 524, 545-47.

Plaintiff was born in 1967.  Her alleged onset date is March 1, 1993.  AR 526.  She is 5'4" and weighs 185.  She is right handed.  She is not married and does not have children.  She lives in an apartment with a friend.  She does not have a driver's license and has never had one.  If she needs to go somewhere, she takes the bus or Handy Ride.  AR 527.  She can take care of her personal grooming needs without help.  She sometimes keeps up with the work around her place, like laundry, cleaning and cooking.  She watches television for about an hour or two a day.  She cannot read, does not visit with friends or family and does not go to movies.  AR 527-28.  She goes to the church "down the road."  AR 529.

Plaintiff testified that she went to fifth grade.  She went to continuation school for a year. She did not get a GED.  AR 529.  She does not have any trade or vocational training.  AR 529. She goes to mental health classes.  AR 530.  She has never been in the military service.  As a teenager, she went to jail for a couple of days.  AR 530.

---

[3]The ALJ noted that while her original application was under review by the Appeals Council, Plaintiff filed a subsequent application on April 23, 2006.  Both applications were consolidated in the ALJ's decision.  AR 14.

Plaintiff has not worked since October 27, 2003. AR 530. She gets general relief and food stamps. AR 530-31.

Plaintiff testified that she had a head injury. She has emphysema and depression. She also hears voices and is paranoid. AR 531. She does not like to get on a bus or be with people. She goes to County Mental Health every couple of months and to mental health class every Monday. AR 532. She sees a doctor every two months and goes to classes once a week. AR 532-33.

Plaintiff has physical pain in her back, head and jaw. Medication helps relieve the pain a little bit and she gets shots once a week. AR 533. She has problems sitting. She lies down and does not sit "very long." AR 533-34. She can walk to the corner. It takes about five minutes. AR 534. The heaviest thing she can lift is her backpack. AR 534.

At the hearing, Plaintiff wore a brace for her back on the outside of her clothes. AR 534-35. "Dr. Orem" prescribed it for her. AR 535. When she went to the hospital, the doctor said she sprained her neck and told her to wear the brace again. AR 535. Plaintiff also had a brace on her right hand for her carpal tunnel and her arthritis. AR 535.

Plaintiff testified that she was depressed. When she is depressed, she feels sad and scared. She does not feel good and it confuses her. AR 535. She hears voices every day. They tell her to kill herself. She has been given medication, but it has not been helping her. AR 535-36.

Plaintiff testified that she has had problems with the use of drugs or alcohol. She had a relapse about four years before the hearing. AR 536. She was drinking because her mom died. Then she got in trouble. She has not had any problems since then. AR 536.

When Plaintiff hears voices, it affects her ability to function. They talk all at once in different languages. AR 536-37. It lasts all the time, but "mostly when" she is around a lot of people. AR 537. She tries to block the voices out. It helps. She takes medicine that helps her a little bit, but the voices come back. The voices make her feel "[s]ick, like demons." AR 537. They scare her. She does not like to be around other people. She intentionally isolates herself during the day. She just goes to her class or to the store and stays home the rest of the time. She is by herself. She has a friend who lives with her. He stays in his own room. He helps her get around. AR 537. She is by herself a minimum of 12 hours a day. AR 538. It does not help her

to talk to the doctor. She takes anxiety medication and medication for hearing voices. It helps a little bit, but she gets immune to it and has to have it changed. AR 538.

Plaintiff testified that she does not focus her attention or concentrate. She "can't stay with nothing." AR 538. She cannot follow a 30-minute television program. AR 538. She will concentrate on a program for five minutes and then take a five-minute break. AR 538-39.

When Plaintiff is feeling sad, she cries. She cries every day, but does not know why. AR 539. The crying spells last 15-20 minutes. She cries about twice a day. AR 539-540.

At home, she cleans her dishes and cooks her breakfast. She does not have anything that she likes to do for fun. She does not have any pets. She has a neighbor that she talks to "[o]nce in a while." AR 540. She does not get together with her neighbors. She rests and lies down most of the day. AR 541.

When she feels depressed, she has suicidal thoughts every couple of days. She tells her doctor about it. Her doctor does not give her advice. She has tried to kill herself. AR 541. She jumped off a roof years ago. She went to the hospital and they kept her overnight. She had a pitchfork in her leg and in her side. About four years ago, she was kept overnight in a psychiatric unit in Texas. She also was kept overnight in Sacramento. AR 542.

She does not have any other symptoms associated with her depression except thinking she is going crazy. AR 542-43. When she gets paranoid, she is scared to be around people. They look at her a lot. She is able to ride a bus with her friend. She does not ride it alone. She does not have any other areas where she is afraid to be around people. She goes shopping on the 8th of every month. AR 543. She goes to the grocery store, but has difficulty being in it. She is in and out because she does not like it. She hears lots of people. She has a difficult time thinking about her sister and older brothers. She has difficulty being in church and goes outside a lot. She has not been going because it is getting too hard. AR 544.

VE Cheryl Chandler testified in response to hypothetical questions. AR 545. For the first hypothetical, the ALJ asked the VE to assume a person of the claimant's age, education and work history with no established exertional or postural limits, but limited to simple routine and repetitive work. The VE testified that there would be jobs in the regional or national economy

that such a person could perform.  The hypothetical was consistent with an unskilled RFC across all exertional levels.  AR 545.  The VE testified that at the light level of exertion, there are 26,000 custodial jobs in the state of California.  There are roughly nine to ten times that number nationally.  AR 546.  In the classification of cleaners, specifically laundry worker, there are 57,500 jobs.  AR 546.  At the light level, there are 13,000 ground maintenance worker jobs.  AR 546.

For the second hypothetical, the ALJ asked the VE to assume the same factors as in the first hypothetical, but also to assume the person had occasional problems maintaining attention, concentration or pace.  AR 546-47.  The VE testified that with an understanding of occasional as affecting one-third of the day, there would be no jobs in the regional or national economy that this person could perform.  AR 547.

For the third hypothetical, Plaintiff's attorney asked the VE to assume the same elements of the first hypothetical, but to add an additional limitation of moderate problems with concentration, attention and pace.  AR 547.  The VE testified that there are no jobs at the occasional level, so going up a level would not improve her odds.  AR 457.

Medical Record

On March 23, 2003, David C. Richwerger, Ed.D., a licensed psychologist, completed a consultative psychological evaluation.  AR 233-39.  Plaintiff reported that she had a diagnostic organic mental disorder, did not trust people and sometimes heard voices.  AR 233.  She stated that she was hospitalized at Sacramento County Mental Health Treatment Center, but did not remember the reason.  She was using a significant amount of crank during that period.  AR 234.  Plaintiff also indicated that she had difficulty concentrating and difficulty with her memory.  She continued to use crank whenever she could get it.  She felt depressed, but denied suicidal or homicidal ideation.  She drank about 40 ounces of beer daily and smoked one pack of cigarettes per day.  AR 234.  Plaintiff reported living with her family.  She did some household chores and would go walking or running.  She took care of her own personal needs and handled her own financial affairs.  AR 235.

On mental status examination, Plaintiff appeared agitated and antsy.  She was oriented to person and place, but not time.  AR 235.  Her thought processes were rational, but she was vague

5

and dismissive of questions. AR 236. Dr. Richwerger opined that Plaintiff's performance "was consistent with a low level of effort throughout much of the evaluation." AR 236. Her reality contact was within normal limits. There was no evidence of hallucinations, delusions, bizarre behavior or response to internal stimuli. AR 236.

Dr. Richwerger administered the Bender-Gestalt, Trails A and B, the Wechsler Adult Intelligence Scale, III (WAIS-III) and the Wechsler Memory Scales, III (WSM-III). He opined that Plaintiff's scores on the WAIS-III and WSM-III were not valid because Plaintiff's performance was consistent with a low level of effort. AR 237-38. Dr. Richwerger diagnosed Plaintiff with malingering, rule out amphetamine intoxication (denied by patient), active amphetamine dependence and learning disorder by given history. AR 238. Dr. Richwerger also noted antisocial personality traits. He opined that Plaintiff was not capable of managing her own funds and appeared to have significant drug-related problems. AR 238.

On April 7, 2003, a state agency consultant completed a Psychiatric Review Technique form. AR 242-55. The consultant opined that Plaintiff had medically determinable impairments that did not precisely satisfy the diagnostic criteria of an affective disorder and a personality disorder. AR 245, 249. She also had a substance addiction disorder. AR 250. The consultant further opined that Plaintiff had moderate restriction of her activities of daily living and marked difficulties in maintaining social functioning, concentration, persistence or pace. There was insufficient evidence of episodes of decompensation. AR 252.

On April 7, 2003, a state agency medical consultant also completed a Mental Residual Functional Capacity Assessment form. AR 256-59. The consultant opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, in the ability to carry out detailed instructions, in the ability to interact appropriately with the general public, in the ability to accept instructions and respond appropriately to criticism from supervisors and in the ability to set realistic goals or make plans independently of others. AR 256-57.

On January 27, 2004, Plaintiff sought emergency room treatment at Sutter General Hospital for complaints of a severe headache. AR 262-70. She was diagnosed with a headache and drug seeking behavior. AR 263.

On March 26, 2004, Michael Joyce, M.D., completed a consultative psychiatric examination of Plaintiff. AR 282-86. Plaintiff's chief complaint was "[n]ot having a place." AR 282. Plaintiff reported that she began using intravenous methamphetamine at the age of 8. She began using alcohol as a preteen and has been hooked on prescription narcotics. AR 282. Plaintiff denied any manic episodes or psychotic symptoms off drugs. AR 283. On mental status examination, Plaintiff was slightly psychomotor accelerated and restless. Her mood was euthymic and her affect was reactive. The possibility of intoxication with stimulants could not be completely excluded. Plaintiff maintained her focus and concentration "for the most part" and there was nothing "to suggest imminent suicidality or homicidality." AR 284.

Dr. Joyce diagnosed methamphetamine addiction (still active), alcohol abuse with rule out dependence, history of prescription narcotic dependence and remote history of cocaine abuse. Plaintiff had no evidence for a primary mood, thought, or anxiety disorder. AR 285. Dr. Joyce assigned Plaintiff a Global Assessment of Functioning ("GAF") of 65. She was unable to identify coins, make simple change, or manage simple funds. She could follow simple and complex instructions. She maintained her concentration and attention throughout the 27-minute interview. She appeared capable of maintaining attendance and performing within a schedule with punctuality and tolerance. She was able to work in coordination with Dr. Joyce without distractability, anxiety or somatic behavior. Dr. Joyce opined that with sobriety, Plaintiff appeared capable of completing a workday and workweek without interruption from a definitive AXIS I condition. She was able to interact with others appropriately, ask simple questions, request assistance when needed and adhere to socially appropriate behavior that did not distract others. She was capable of identifying hazards and taking appropriate precautions. AR 286. Dr. Joyce summarized that other than her drug abuse, Plaintiff appeared generally capable of responding appropriately to supervision, coworkers, or the usual work situation including changes in a routine setting. AR 286. Plaintiff's prognosis was very guarded given her recent methamphetamine and alcohol abuse. AR 286.

On April 14, 2004, Ray Willey, Adult Ed Teacher from the San Juan Unified School District, administered Plaintiff the RAVEN and the ABLE-Level I assessments. On the RAVEN,

which measures abstract and analytical reasoning and orderly thinking, Plaintiff ranked at less than the 3rd percentile (below average) when compared to a 36-year-old age group. On the ABLE, which measures basic academic skills, Plaintiff scored at the seventh grade level in vocabulary, third grade-fifth month in reading comprehension, kindergarten in spelling, kindergarten-ninth month in number operations, fifth grade in problem solving and third grade-fourth month in total mathematics. Mr. Willey noted that Plaintiff was very nervous during the assessments. She could not do any of the spelling and he read the reading comprehension statements to her. AR 170.

On April 16, 2004, Charlotte Bible, M.D., a state agency physician, completed a Psychiatric Review Technique form. AR 287-300. Dr. Bible assessed Plaintiff with a substance addiction disorder. AR 295. Dr. Bible opined that Plaintiff had mild restriction of her activities of daily living and mild difficulties in maintaining social functioning. Plaintiff also had moderate difficulties in maintaining concentration, persistence or pace. AR 207. The assessment was affirmed as written on August 7, 2004. AR 287.

On April 16, 2004, Dr. Bible also completed a Mental Residual Functional Capacity Assessment form. AR 301-03. Dr. Bible opined that Plaintiff was moderately limited in the ability to understand, remember and carry out detailed instructions. AR 301.

On May 13, 2004, Plaintiff sought treatment from Sacramento County Mental Health. AR 308. She had a diagnosis of Psychosis NOS, cocaine dependence and amphetamine dependence. She reportedly had been clean six weeks and was depressed and lonely. She denied any hallucinations and was not suicidal. AR 308.

On August 5, 2004, Daniel Hill, MFT, with Fresno County Mental Health, completed a comprehensive assessment of Plaintiff. AR 356-60. On mental status examination, Plaintiff's behavior was within cultural norms. Her affect was flat, congruent and constricted/inhibited. AR 358. She reported auditory hallucinations and paranoid delusions. Her thoughts were logical, rational and coherent. Her immediate recall was intact. Her short-term, recent and remote/long-term memory was fair. Her abstraction, interpretation, judgment and insight were poor. AR 359. Mr. Hill diagnosed Plaintiff with major depressive disorder, recurrent with psychotic features,

1  alcohol dependence in full, sustained remission and amphetamine dependence in full, sustained

2  remission. AR 360.

3      On August 11, 2005, Mr. Hill completed a General Relief form. AR 361-62. He opined

4  that Plaintiff had a physical or mental incapacity that prevented or substantially reduced her ability

5  to engage in work, training, and/or provide necessary care for her children. She was highly

6  paranoid, depressed and heard voices. She was unable to maintain focus and concentration and

7  had difficulty being around people. Mr. Hill further opined that she was not able to work and her

8  prognosis was poor as her condition was chronic and long term. AR 361-62. She was diagnosed

9  with major depressive disorder with psychotic features. AR 362.

10     On August 25, 2004, Mr. Hill referred Plaintiff for a medication evaluation. AR 366.

11     On September 1, 2004, Mr. Hill prepared an initial plan of care with Plaintiff to address

12  depression, voices and paranoia. Mr. Hill opined that Plaintiff's prognosis was fair. AR 353.

13     On September 14, 2004, Plaintiff did not show for her appointment with Mr. Hill. AR

14  350.

15     On September 22, 2004, Plaintiff saw Dr. Jan Munson at Fresno County Mental Health

16  for a medical evaluation. AR 326. Plaintiff reported being depressed, but denied suicidal and

17  homicidal ideation. She reported auditory hallucinations. AR 326. Dr. Munson assessed Plaintiff

18  with MDD, recurrent with psychotic features. AR 326. Plaintiff was to continue the medication

19  prescribed for her by Sacramento County Mental Health and begin Lexapro for depression. AR

20  326. Plaintiff also was to continue psychotherapy. AR 326.

21     On September 27, 2004, Plaintiff reported to Mr. Hill that she was doing a little better

22  since getting back on medications. AR 349. She stated that she was able to rest and sleep better,

23  but the paranoia and depression remained the same. AR 349. She did not feel any benefit from

24  the Lexapro. AR 349.

25     On October 11, 2004, Plaintiff reportedly forgot about her mental health therapy session.

26  She told Mr. Hill that she had been sick. AR 348.

27     On October 27, 2004, Plaintiff cancelled her therapy session. AR 347.

28

On October 28, 2004, Plaintiff spoke with Mr. Hill at Fresno County Mental Health. AR 346. Plaintiff reported that she was ill and her mental and emotional symptoms remained about the same. AR 346.

On November 17, 2004, Plaintiff cancelled her therapy session at Fresno County Mental Health. AR 345.

On December 15, 2004, Plaintiff saw Dr. Munson at Fresno County Mental Health. AR 325. Plaintiff appeared anxious, rocking back and forth. AR 325. Dr. Munson diagnosed Plaintiff with MDD, recurrent with psychotic features. Plaintiff's treatment plan included slowly tapering off of Seroquel, discontinuing Lexapro and starting Abilify and Prozac. AR 325.

On December 15, 2004, Plaintiff reported to Mr. Hill that the voices and paranoia were getting worse. AR 343.

On January 27, 2005, Plaintiff cancelled her therapy with Mr. Hill at Fresno County Mental Health because of oral surgery. Plaintiff reported that her medications did not seem to be working. AR 340.

On February 1, 2005, Plaintiff told Mr. Hill that she could meet with him for only 10 minutes. AR 399.

On February 7, 2005, Plaintiff cancelled her therapy appointment at Fresno County Mental Health. However, she reported that the voices continued to be worse. AR 339.

On February 17, 2005, Plaintiff saw Mr. Hill for individual therapy. She reported that her psychotic symptoms seemed to be getting worse. She was hearing voices all day, everyday, and was paranoid all the time. AR 338.

On March 2, 2005, Plaintiff did not show for an appointment with Mr. Hill. AR 396.

On March 18, 2005, Plaintiff reported to Mr. Hill that her current medications were not working and she needed something to reduce the voices. AR 395.

On March 23, 2005, Plaintiff did not show for an appointment with Mr. Hill. AR 394.

On April 6, 2005, Plaintiff did not show for an appointment with Dr. Munson. AR 389.

On April 20, 2005, Plaintiff reported to Mr. Hill that she was out of medications and the voices and paranoia were getting worse. AR 391.

10

On July 13, 2005, Plaintiff spoke with a nurse at the Fresno County Department of Adult Services. Plaintiff reported doubling her Prozac because she was hearing voices. The nurse reportedly told Plaintiff that Prozac was not for hearing voices. AR 321.

Plaintiff was unable to attend an appointment with Dr. Munson on July 27, 2005. She stated that her boyfriend had swollen ankles and could not drive her. AR 317.

On August 11, 2005, Plaintiff reported to Mr. Hill that she was always paranoid, hearing voices and having difficulty sleeping. AR 385.

On September 28, 2005, Plaintiff failed to show up for an appointment. Plaintiff had not been seen by Dr. Munson since December 2004. AR 315.

On October 19, 2005, Dr. Munson increased Plaintiff's dosage of Prozac. AR 313. Dr. Munson opined that Plaintiff had a significant impairment and a probability of significant deterioration. The focus of Plaintiff's treatment was auditory hallucinations, paranoia and depression. AR 314.

On January 4, 2006, Plaintiff saw Dr. Munson for a medication follow-up appointment. Plaintiff reported that her Abilify did not do anything and she had been depressed since increasing her Prozac. Plaintiff was to discontinue Abilify and restart Seroquel. AR 381.

On February 13, 2006, Plaintiff reported to Mr. Hill that she had been doing better since switching to Seroquel. The voices and paranoia were still there, but did not bother her as much. Her depression was not quite as bad. AR 379.

On March 23, 2006, Plaintiff sought treatment from Xavier D. Lara, M.D., a psychiatrist. AR 364. She reported daily voices, paranoia and anxiety. AR 364. Dr. Lara discontinued Seroquel and added Prozac. AR 364.

On April 3, 2006, Plaintiff saw Mr. Hill for rehabilitation services. She reported that her medications were not working, that she was shaking and the voices were worse. AR 375. On April 19, 2006, Plaintiff again reported to Mr. Hill that her medications were not working. AR 373.

On May 16, 2006, Plaintiff sought treatment from Dr. Lara. She reported insomnia, paranoia and anxiety. Dr. Lara diagnosed alcohol dependence. Plaintiff was to continue with Risperdal. AR 371.

On June 28, 2006, Plaintiff failed to appear for an appointment with Dr. Munson. AR 368. Plaintiff next saw Dr. Munson on July 19, 2006. She stated that her Risperdal did not work and the voices told her to kill herself. She reported that it got so bad that she had to pinch her arm with pliers and could not do community service with the voices. AR 477. Dr. Munson noted that Plaintiff was testing for drugs and alcohol twice a week through probation. Dr. Munson discontinued Risperdal, continued Prozac and started Plaintiff on Haldol. AR 477.

On August 18, 2006, Plaintiff completed the primary phase of substance abuse treatment. AR 232.

On August 29, 2006, Richard Engeln, Ph.D., a clinical psychologist completed a consultative psychological evaluation. AR 403-06. Plaintiff was alert and oriented with no evidence of any delusions, hallucinations or confusion. Dr. Engeln noted that Plaintiff "emphasized helplessness, but with a flippancy." AR 404. Her verbal expression was easily understood and appropriate in form and association. Dr. Engeln indicated that Plaintiff's responses to the Rey 15 Item Memory Test II and the Test of Memory and Malingering were both positive for exaggeration. The obtained scores appeared to be underestimates of her actual ability level, reflecting attitudinal-emotional issues. AR 404. Her obtained intellectual measurements of verbal and visual intelligence were low, in the mild range of mental retardation.

Dr. Engeln opined that Plaintiff presented "with no evidence of any mental or emotional illness." AR 405. He diagnosed an exaggerated protocol and alcohol and methamphetamine addiction reportedly in remission on probation. AR 406. Dr. Engeln stated that because of her exaggeration, he was unable to say what her abilities were. The interview presentation suggested mid-borderline intellectual skills. She appeared mentally competent to manage funds, but would need a limited conservator to assist in money management issues. She appeared verbally and cognitively capable of job adjustment in an entry-level context where instructions are simple and unidimensional and normal supervision is provided. She would be able to perform one-to-two

step simple job instructions, but would not be able to receive complex or technical job instructions. Dr. Engeln concluded that drug usage issues and related emotional disorders were primary issues intruding on job adjustment. AR 406.

On October 11, 2006, E.B. Aquino-Caro, a state agency medical consultant, completed a Psychiatric Review Technique form. AR 412-22. Dr. Aquino-Caro opined that Plaintiff's impairments were not severe. AR 412, 424.

On October 18, 2006, Plaintiff saw Dr. Munson for medication services. She reported that her medication did not work and she saw spiders coming out of her hands. She also reported that the voices made her dizzy and pass out. On mental status exam, she was cooperative and alert. She had normal motor activity, cognition, speech, orientation and affective range. Her mood was depressed and her thought content included delusions and hallucinations. AR 475. Dr. Munson increased her Haldol. AR 475.

Plaintiff saw Dr. Munson on November 29, 2006, for medication services. AR 474. Plaintiff reported hearing voices and having anxiety attacks every day. She also reported that she could not sleep. Dr. Munson increased Plaintiff's Haldol, continued her Prozac and started her on Clomazepam. AR 474.

On January 23, 2007, Plaintiff completed the primary and aftercare phase of substance abuse treatment. AR 231.

On January 31, 2007, Plaintiff saw Dr. Munson for medication services. On mental status exam, Plaintiff was cooperative and her motor activity, cognition, speech, orientation, mood, affective range, and insight and judgment were normal. AR 473. Dr. Munson noted hallucinations and Plaintiff was to continue with her current medications. AR 473.

On March 7, 2007, Plaintiff met with Mr. Hill to discuss her current functioning ability and whether she was able to work. AR 470. They agreed that she remained disabled and that it was probably permanent. AR 470.

On May 14, 2007, Plaintiff sought treatment for back pain. AR 484. She received injections of Depomedrol and Dexameth. AR 484.

On April 18, 2007, Plaintiff saw Dr. Munson for medication management. AR 466. Plaintiff reported that her voices had worsened due to increased anxiety. AR 466. On mental status exam, she was alert and had normal motor activity, cognition, speech, orientation, insight and judgment. Her mood was anxious and her thought content included hallucinations. AR 466. She was to continue Haldol. AR 466.

On June 25, 2007, Plaintiff was diagnosed at Fresno Shields Medical Center with nerve root impingement. AR 483.

On June 27, 2007, Plaintiff received treatment from Dr. Munson for medication management. AR 459. She reported having daily panic attacks, which increased the voices. She had multiple physical complaints, including a bad back. AR 459. On mental status exam, Plaintiff was cooperative, with normal motor activity, cognition, speech and orientation. AR 459. Her mood was anxious. AR 459. Dr. Munson diagnosed Plaintiff with major depressive disorder with psychotic features. She was to continue her current medications and start alprazolam for anxiety. AR 459.

On October 25, 2007, Plaintiff sought treatment from Kevin Marmolejo, M.D. AR 450. She reported that she was stable on her current medication. Dr. Marmolejo diagnosed her with psychotic nos history of major depressive disorder with psychotic features. AR 450. Her medications included Haldol, Cogentin, Prozac and alprazolam. AR 450.

Between February 14, 2007, and December 6, 2007, Plaintiff attended group therapy approximately sixteen times. AR 451, 445-47, 454-58, 460, 462, 465, 467, 469, 471-72. She reportedly attended as part of her probation. AR 472.

On January 30, 2008, Plaintiff again saw Dr. Marmolejo. She complained of depression, hearing whispers, which Haldol helped decrease, and severe insomnia. She indicated that she spent most of her day watching TV and had chronic back pain and carpal tunnel syndrome. AR 441. Dr. Marmolejo diagnosed Plaintiff with psychotic disorder nos with a history of major depressive disorder with psychotic features. She was to continue Haldol and Cogentin, increase Prozac, start Benadryl for insomnia and continue Xanax for anxiety. AR 441. Dr. Marmolejo

also completed a Physician Plan of Care. AR 442. He opined that Plaintiff had a significant impairment with the probability of significant deterioration. AR 442.

On January 30, 2008, Dr. Engeln again evaluated Plaintiff. AR 427-31. During the interview, Plaintiff reported that she was applying for disability because she had emphysema, degenerative disc disease and bilateral carpal tunnel. AR 427. On evaluation, Plaintiff was alert and oriented with no evidence of any delusions, hallucinations or confusion. She had bilateral wrist braces and a chest and back brace. She emphasized pain on movement and presented with much helplessness and dependency. AR 429. Dr. Engeln indicated that Plaintiff was unwilling to demonstrate her full array of competency. Her obtained scores were not valid measurements of ability, but reflected attitudinal-emotional issues. Her response to the Rey 15 Item Memory Test II was positive for exaggeration. AR 429. Her obtained intellectual measurements for verbal intelligence and visual intelligence were in the moderate range of mental retardation. Her obtained memory scores were measured in the moderate range of mental retardation. Her working memory was measured in the mild range of mental retardation. AR 430.

Dr. Engeln diagnosed Plaintiff with major depression related to medical-physical issues and a malingered protocol. He was unable to say what her abilities actually were because of her exaggeration. He opined that verbally, cognitively and socially Plaintiff appeared "capable of job adjustment in an entry-level context where instructions are simple, and unidimensional and normal supervision is provided." AR 430. She would be able to perform one-to-two step simple job instructions, but would not be able to receive complex or technical job instructions. AR 430. Dr. Engeln also indicated that Plaintiff would be restricted in making a job adjustment in a context where academic demands were components. Dr. Engeln noted that any restrictions to job adjustment would be medical-physical. AR 430.

On February 13, 2008, Dr. Marmolejo completed a General Relief form. He opined that Plaintiff had a physical or mental incapacity that prevented or substantially reduced her ability to engage in work, training, and/or provide necessary care for her children. She was distracted by hallucinations and paranoid thoughts. She was not able to work. AR 425. Dr. Marmolejo

further opined that Plaintiff's prognosis was poor and she would likely be impaired despite treatment. AR 426.

On January 11, 2008, Plaintiff was diagnosed at Fresno Shields Medical Center with leg cramps and carpal tunnel syndrome. AR 479.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairment of depression. Despite this impairment, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform simple, routine and repetitive work at all exertional levels. Although Plaintiff had no past relevant work, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could perform. AR 16-20

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," _Richardson v. Perales_, 402 U.S. 389, 402 (1971), but less than a preponderance. _Sorenson v. Weinberger_, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." _Richardson_, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. _Jones v. Heckler_, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. _E.g._, _Burkhart v. Bowen_, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. _See_ _Sanchez v. Sec'y of Health and Human Serv._, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g).  Applying this process in this case, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since October 27, 2003; (2) has an impairment or a combination of impairments that is considered "severe" (depression) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) there are jobs that exist in significant numbers in the national economy that she can perform.  AR 16-21.

Here, Plaintiff argues that (1) the ALJ failed to perform a credibility analysis as ordered by the Appeals Council; (2) the ALJ failed to properly assess her mental impairment, including the opinion of Dr. Marmolejo; and (3) the ALJ failed to offer sufficient rationale to reject third-party statements.

**DISCUSSION**

A.    Compliance with Appeals Council's Remand Order

Plaintiff first asserts that the ALJ did not "properly" comply with the directives of the Appeals Council's remand order.  Opening Brief, p 6.  Plaintiff's argument is misdirected.  As the Commissioner points out, the remand order itself is not subject to review.  After the Appeals

17

Council vacated the ALJ's initial hearing decision and remanded the matter, the ALJ issued a new hearing decision in May 2008. The Appeals Council denied Plaintiff's request for review of that decision. Where, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner, and that decision is subject to judicial review. *See* 42 U.S.C. § 405(g). Accordingly, the Court must determine whether the ALJ's final decision is supported by substantial evidence and is free of legal error and not whether the ALJ complied with the Appeals Council's remand order. *See Sanchez,* 812 F.2d at 510; *see also Stoddard v. Astrue,* 2009 WL 2030349, *6 (C.D.Cal. July 8, 2009) (finding no merit to claimant's argument that the ALJ erred in failing to comply with Appeals Council's remand order).

B.     Substantial Evidence

      1.     Credibility Determination

Plaintiff next contends that the ALJ failed to properly analyze her credibility. In particular, Plaintiff claims that the ALJ failed to consider the factors outlined in Social Security Ruling ("SSR") 96-7p in rejecting her credibility.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Ceguerra v. Secretary of HHS,* 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue,*495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third

18

parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

SSR 96-7p further provides factors that may be considered to determine a claimant's credibility such as: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

Here, the ALJ discredited Plaintiff's credibility because the record revealed a documented " pattern of exaggeration beginning with the first consultative examination in March 2003." AR 18. The ALJ first cites Dr. Richewerger's diagnosis of malingering in 2003. The ALJ also relied on Dr. Richwerger's notations that Plaintiff was vague and dismissive of many of his questions and that her performance was consistent with a low level of effort throughout the evaluation. AR 18, 237-38. The ALJ additionally relied on consultative psychologist Dr. Engeln's findings in August 2006 that Plaintiff's test responses were positive for exaggeration and Dr. Engeln's January 2008 examination, which showed that Plaintiff's responses to the Rey were positive for exaggeration.[4] AR 18, 406, 429. Affirmative evidence of malingering, such as a diagnosis and pattern of exaggeration, supports the ALJ's adverse credibility finding. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

---

[4]The ALJ also pointed to an emergency room report from January 2004, which indicated that Plaintiff had a story that changed several times and was exhibiting drug seeking behavior. AR 18, 269-70. The ALJ reported that this was not the only reference to "drug-seeking behavior" in the record. AR 18, 263, 278. An ALJ is entitled to make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

Insofar as Plaintiff argues that malingering is consistent with an antisocial personality disorder, this argument does not undermine the ALJ's credibility determination or contradict record evidence that Plaintiff was malingering. Further, the Court cannot address Plaintiff's contention regarding the characteristics of an antisocial personality disorder as this evidence was not properly before the ALJ.

In the alternative, Plaintiff argues that even if there were a pattern of malingering, the ALJ erred by failing to apply each of the factors enumerated in SSR 96-7p. Plaintiff's argument is without merit. First, Plaintiff has the burden of proving disability and, in this instance, she cites no specific evidence of record to demonstrate that the ALJ's failure to consider any of the specific factors set forth in SSR 96-7p undermines his credibility determination.

Second, Plaintiff incorrectly argues that SSR 96-7p sets forth mandatory factors that an ALJ must analyze. An ALJ is not required to discuss and analyze each and every one of the factors enumerated in SSR 96-7p. *See*, *e.g.*, *Collins v. Astrue*, 2009 WL 1202891, *6 (C.D.Cal. Apr. 27, 2009)*; *O'Neal v. Barnhart*, 2006 WL 988253, *12 n.7 (C.D.Cal. Apr. 13, 2006)*; *Powell v. Massanari*, 2001 WL 1563712, *3 (N.D.Cal. Dec. 3, 2001)* (noting that there is no specific requirement that ALJ set forth in the decision his analysis as to each factor identified in SSR 96-7p). Moreover, the record reflects that the ALJ considered several of the factors outlined in SSR 96-7p. For example, the ALJ analyzed Plaintiff's testimony regarding her activities of daily living, noting that although Plaintiff testified that she did not like to be around people, she lived with a friend, attended church, went to food stores for brief times, rode the bus and went to mental health classes. AR 17.

The ALJ also considered the treatment Plaintiff received, specifically noting that she was wearing a back brace and arm brace at the hearing without apparent support in the record. AR 16. An ALJ's observations during the hearing, along with other evidence, constitutes substantial evidence. *Drouin v. Sullivan,* 966 F.2d 1255, 1258-59 (9th Cir. 1992). Additionally, the ALJ noted Plaintiff's multiple missed treatment appointments. AR 18. A claimant's failure to seek or follow prescribed treatment is a proper basis for finding her allegations not credible. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001).

1    Plaintiff has not contended that these determinations by the ALJ were in error.

2    Accordingly, the Court finds that the ALJ's credibility determination was supported by substantial

3    evidence in the record.

4        2.    Treating Physician

5    Plaintiff next argues that the ALJ erred by failing to properly assess her mental

6    impairment, particularly the opinion of her treating physician, Dr. Marmolejo. The opinions of

7    treating doctors should be given more weight than the opinions of doctors who do not treat the

8    claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester*, 81 F.3d at 830. Where

9    the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for

10   "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at

11   830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not

12   reject this opinion without providing "specific and legitimate reasons" supported by substantial

13   evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). This

14   can be done by setting out a detailed and thorough summary of the facts and conflicting clinical

15   evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d

16   747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions. He must set forth

17   his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v.*

18   *Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Therefore, a treating physician's opinion must be

19   given controlling weight if it is well-supported and not inconsistent with the other substantial

20   evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n. 10 (9th Cir. 2007).

21   Here, the ALJ rejected Dr. Marmolejo's opinion that Plaintiff was unable to work because

22   she is distracted by hallucinations and paranoid thoughts. AR 18. Instead, the ALJ gave

23   substantial weight to the contradictory opinion of the consultative examining physician, Dr.

24   Engeln. AR 20. As noted, if a treating doctor's opinion is contradicted by another doctor, the

25   ALJ must provide "specific and legitimate reasons" supported by substantial evidence in the

26   record to reject the treating doctor's opinion. *Lester*, 81 F.3d at 830. In this case, the Court

27   finds that ALJ did not provide specific and legitimate reasons for rejecting Dr. Marmolejo's

28   opinion that are supported by the entire record.

The ALJ first rejected Dr. Marmolejo's opinion regarding Plaintiff's ability to work because Fresno County Mental Health records showed that Dr. Marmolejo had only seen the claimant on two occasions. AR 18. Although it is appropriate to consider the length of treatment, the ALJ's reasoning in this instance is not legitimate or consistent. While simultaneously discrediting Dr. Marmolejo for seeing Plaintiff on two occasions, he afforded substantial weight to the examining physician "who twice examined" Plaintiff. AR 20.

The ALJ next discounted Dr. Marmolejo's opinion because when Plaintiff saw Dr. Marmolejo in October 2007 she denied hallucinations, in January 2008 she only mentioned hearing "whispers" which Haldol helped decrease, and neither record mentioned any paranoid thoughts. AR 18. An ALJ may reject a treating physician's opinion that is inconsistent with the physician's own treating records. *See, e.g.,* *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between treating physician's questionnaire responses and the medical records provides a specific and legitimate reason for rejecting treating physician's conclusion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ permitted to reject treating physician opinion that contradicts physician's clinical notes). In this case, the ALJ accurately recounts Dr. Marmolejo's treatment notes. However, Dr. Marmolejo's notes were not wholly inconsistent with Plaintiff's treatment records. As a practical matter, Dr. Marmolejo noted "whispers," which is not inconsistent with hallucinations. More importantly, the ALJ ignores the bulk of Plaintiff's remaining treatment records from Fresno County Mental Health, which are consistent with Dr. Marmolejo's findings regarding both hallucinations and paranoia. AR 314, 326, 364, 371, 383, 459, 466, 473, 474, 475, 477. The ALJ also did not address the supporting opinion of the state agency medical consultant dated April 7, 2003. AR 242-55. There, the consultant opined that Plaintiff had an affective disorder and a personality disorder. AR 245, 249. Plaintiff also had moderate restriction of her activities of daily living and marked difficulties in maintaining social functioning, concentration, persistence or pace. AR 252. The ALJ cannot pick and choose from the evidence to support his conclusions. *See* *Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984); *see also* *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) (an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion).

As a final reason for rejecting Dr. Marmolejo's opinion, the ALJ pointed to the Global Assessment of Functioning ("GAF") rating of Plaintiff at 55 in January 2008. AR 18. The ALJ opined that this rating was indicative only of moderate symptoms or moderate difficulties in functioning. AR 18. The Court notes that this is just one piece of evidence and, taking the record as a whole, the ALJ's decision to reject Plaintiff's treating physician's opinion is not supported. Further, a GAF is not determinative of mental disability for social security purposes and does not have a direct correlation to the severity requirements in the mental disorders listings. *Isaacson v. Astrue*, 2009 WL 3233539, * 4 (C.D.Cal. Oct. 2, 2009).

The Commissioner argues that the ALJ was free to rely on Dr. Engeln's contradictory opinion because it was based on independent clinical findings. In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray v. Heckler,* 722 F.2d 499, 501-502 (9th Cir. 1983). "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physicians, such findings are 'substantial evidence.'" *Orn,* 495 F.3d at 632; *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir. 1985), or (2) findings based on objective medical tests that the treating physician has not himself considered, *see Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995). Here, there is no indication that Dr. Engeln provided independent clinical findings. First, Dr. Engeln's diagnosis of major depression did not differ from Dr. Marmolejo's (or Dr. Munson's) diagnosis of depression. AR 430, 441. Second, to the extent that the Commissioner contends that Dr. Engeln's findings were based on objective medical tests that the treating physician had not considered, the Court notes that Dr. Engeln's tests were directed at Plaintiff's intellect and memory, and not her psychological impairments. AR

429-30.  Moreover, Dr. Engeln admitted that he was unable to say what Plaintiff's abilities actually were (albeit due to exaggeration).  AR 430.

Even if Dr. Marmolejo's opinion was not entitled to controlling weight because it was not well supported or because it was inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 416.927(d) to consider the factors listed in Section 416.927(d)(2)-(6) in determining what weight to accord the opinion of the treating physician.  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "[n]ature and extent of the treatment relationship" between the patient and the treating physician.  20 C.F.R. 416.927(d)(2)(i)-(ii).  Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements.  20 C.F.R. § 416.927(d)(3)-(6).  Here, the ALJ did not undertake such an analysis, including the nature of the treatment relationship, consistency of Dr. Marmolejo's opinion with the record as a whole and his specialization.  Morever, even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference."  SSR 96-2p; *Orn*, 495 F.3d at 632-633.  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  SSR 96-2p; *Orn*, 495 F.3d at 633.

Based on the above, the Court finds that ALJ erred in rejecting the opinion of Plaintiff's treating physician and the corresponding evaluation of her mental impairment.

3.      Third Party Statements

Plaintiff contends that the ALJ also failed to offer sufficient rationale for rejecting the third-party statements of Patricia Tramonte, Daniel Hill and three state agency interviewers.  "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006). Such testimony is competent evidence and "cannot be disregarded without comment."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996).  If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness."  Id. The reasons "germane to

each witness" must be specific. *Stout*, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony") (emphasis added).

Plaintiff first contends that the ALJ erred by rejecting the statement of her sister, Patricia Tramonte, as inconsistent with treatment records. In his decision, the ALJ rejected Ms. Tramonte's reports that Plaintiff has paranoid thoughts and has spoken of hearing voices because Dr. Marmolejo's progress notes indicated that Plaintiff only hears whispers that are decreased by medication and she did not complain of paranoid thoughts. AR 19. Inconsistency with medical evidence is a valid reason for rejecting a lay witness's testimony. *Bayliss*, 427 F.3d at 1218. Here, however, the ALJ erred when considering Dr. Marmolejo's opinion by ignoring the bulk of Plaintiff's treatment records from Fresno County Mental Health, which documented hallucinations and paranoia. Ms. Tramonte's third-party testimony is consistent with the treatment records.

Plaintiff next contends that the ALJ erred by failing to address the third party observations by therapist Daniel Hill. Opening Brief, p. 17. Contrary to Plaintiff's assertion, the ALJ did consider Mr. Hill's opinion that Plaintiff was permanently unable to work. AR 18. In so doing, the ALJ indicated that Mr. Hill's notes reflected a combination of missed appointments and a recitation of Plaintiff's subjective complaints. AR 18. As the ALJ found Plaintiff's subjective complaints unreliable, he gave little weight to Mr. Hill's statement that Plaintiff could not work. AR 18.

Although witnesses have to rely in part on communications with the claimant in ascertaining whether she is disabled or malingering, the Ninth Circuit has found that third parties are in a position to observe a claimant's symptoms and daily activities. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). That the ALJ dismissed Mr. Hill's opinion because he found the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant. "An eyewitness can often tell whether someone is suffering or merely malingering" and the opinion of someone who sees the claimant still carries some weight. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

Based on the above, the Court finds that the ALJ erred in his rejection of the statements from Patricia Tramonte and David Hill. However, insofar as Plaintiff contends that ALJ erred by

not addressing the statements of state agency interviewers, Erin Tiraterra, M. Simonds and C. Galter, this contention is without merit. The notations by the state agency interviewers provide little probative evidence. See, e.g., *Albritton v. Sullivan*, 889 F.2d 640, 643, n. 2 (5th Cir. 1989) (state agency interviewer form had little probative value as form was silent as to whether interviewer tested claimant).

C.  Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." Id. (citation omitted); see also Varney v. Secretary of Health & Human Serv., 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the ALJ should have credited Dr. Marmolejo's opinion and considered Plaintiff's treatment records from Fresno County Mental Health and third party statements. Accordingly, the Court finds that this action should be REMANDED for consideration of Plaintiff's mental impairment, including the opinion of her treating physician, treatment records from Fresno County Mental Health, and the statements from third party witnesses Patricia Tramonte and Daniel Hill.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for

further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter

judgment in favor of Plaintiff Melissa Howard and against Defendant Michael J. Astrue,

Commissioner of Social Security.


          IT IS SO ORDERED.

     **Dated:    February 9, 2010**                    _____/s/ **Dennis L. Beck**_____
                                                       UNITED STATES MAGISTRATE JUDGE